THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT DAVIS and KEN KUGLER,

        Plaintiffs,

v.

ALLEN FOX, et al.,

        Defendants.

3:12-CV-1660
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion to Dismiss (Doc. 59) Plaintiffs' "Amended Second Amended Complaint" ("October 18, 2013 Complaint," Doc. 54), which alleges, pursuant to 42 U.S.C. § 1983, First Amendment retaliation (Counts I and II) and conspiracy (Count III). For the reasons set forth below, the Court will deny Defendants' Motion.

### II. Factual Allegations and Procedural History

Plaintiffs Davis and Kugler are Jackson Township municipal police officers. (Oct. 18, 2013 Compl. at ¶ 26). Defendants Fox and Wilkes are Jackson Township Supervisors. (*Id.* at ¶¶ 3-4). Defendant Jackson Township is a Pennsylvania municipality. (*Id.* at ¶ 5).

On December 8, 2011, Davis "requested information pursuant to a Right-to-Know" request. (*Id.* at ¶ 13). "The Right-to-Know requests specifically requested '[a]ll applications for federal and state disaster assistance and/or grants for 2010 and 2011 filed by or for Jackson Township'" as well as the "hourly wage, total gross income, and total overtime

hours paid to each and every employee and Supervisor of Jackson Township separately for 2010 and 2011.'" (*Id.* at ¶ 14). "[W]ithin two (2) weeks" of Davis' requests, "Fox threatened Plaintiff that he would take his job away from him if he pursued such requests and tried to intimidate him into dropping said Right-to-Know requests." (*Id.* at ¶ 13). "Fox told Police Chief Jerry Leedock that if the [Right-to-Know] requests proceed 'Davis will be out of a job.'" (*Id.* at ¶ 17). Also in December 2011, "Defendants began . . . a campaign of harassment toward Plaintiffs," which included docking Plaintiffs' pay and refusing to pay them overtime. (*Id.* at ¶ 28). As a result, "Davis was deterred from filing any further [Right-to-Know] requests[.]" (*Id.* at ¶ 15).

In January 2012, Plaintiffs "reported official misconduct engaged [in] by Defendants to Federal Bureau of Investigation (FBI)[.]" (*Id.* at ¶ 20). Specifically, Plaintiffs reported "official misconduct and abuse of power," "including but not limited to fraud of federal funds and misappropriation of public federal funds," "to FBI Director Kevin Wevodau and FBI Special Agent Joseph Noone." (*Id.* at ¶¶ 20, 22). Consequently, Defendants, who "were aware that Plaintiffs spoke with the FBI," allegedly began to "engag[e] in surveillance" of Plaintiffs. (*Id.* at ¶¶ 21, 28).

On February 21, 2012, Plaintiffs met with the FBI. (*Id.* at ¶ 23). "The very next day, the FBI issued and served a subpoena on Jackson Township for township records[.]" (*Id.* at ¶ 24). "In or around February 2012," Defendants allegedly "threaten[ed] to eliminate the entire police department" and began harassing Plaintiffs "via text and verbally." (*Id.* at ¶ 28).

2

According to Plaintiffs, Defendants Fox and Wilkes "were acting in conspiracy to violate Plaintiffs' First Amendment rights and cause harm to Plaintiffs." (*Id.* at ¶ 54). Starting in "or around March 2012," Defendants purportedly began to "wrongfully interfer[e] with police business and [to] incit[e] individuals to make complaints about Plaintiffs." (*Id.* at ¶ 28). Specifically, "Fox has required all part-time police officers who have been newly hired, which includes John Saranchuk and Jason Kwiatkoski, to be his 'ally' to harm Plaintiff Davis[.]" (*Id.* at ¶ 51). Further, Fox allegedly "incited" the part-time officers "to make complaints about Sergeant Davis" and to email him "with any and all alleged 'dirt' on Plaintiff" Davis. (*Id.*). Plaintiffs allege, "Fox has orchestrated the attempted removal of [Davis] with the replacement of part-time police officer, John Saranchuk." (*Id.* at ¶ 50).

### III. Standard of Review

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

### a. First Amendment Retaliation Claims

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id* (internal citations and quotation marks omitted). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Count I of the October 18, 2013 Complaint contains First Amendment retaliation claims against Defendants based on two alleged instances of free speech: (1) Davis' December 2011 right-to-know request and (2) Davis and Kugler's January 2012 report to the FBI (Doc. 54 at ¶¶ 13, 20). Count II alleges First Amendment retaliation in connection with Plaintiffs' "fil[ing] this lawsuit against Defendants" on August 21, 2012. (*Id.* at ¶ 34). Defendants do not dispute that Plaintiffs allegedly engaged in activity protected under the First Amendment. (Defs.' Br. in Supp., Doc. 60, at 14). Instead, they argue that Plaintiffs fail to state a claim of retaliation, since the "campaign of harassment" alleged (1) lacks

5

specificity and (2) does not demonstrate a causal connection with the protected activity. (*Id.* at 11-14).

First, Defendants argue that the October 18, 2013 Complaint "contains no factual instances or examples of retaliatory behavior, threats, harassment, or wrongful inference with police business." (*Id.* at 11). Defendants assert that "a formulaic recitation of the elements of a cause of action is not sufficient" to survive a motion to dismiss and that a "'formulaic recitation of a cause of action' is exactly what Plaintiffs have presented to the Court here." (*Id.* (quoting *DelRio-Mocci*, 672 F.3d at 245 (quoting *Twombly*, 550 U.S. at 555))). According to Plaintiffs, after they "engag[ed] in protected activities, Defendants began . . . a campaign of harassment [against them] that included job threats, harassing texts, refusals to pay overtime, and a loss of pay." (Pls.' Br. in Opp., Doc. 62, at 9).

Plaintiffs allege that Defendants began an ongoing "campaign of harassment toward Plaintiffs" in December 2011. (Oct. 18, 2013 Compl. at ¶¶ 13, 28). Within two weeks of Davis submitting his right-to-know request, Plaintiffs assert, "Fox threatened [Davis] that he would take his job away from him if he pursued such requests and tried to intimidate him into dropping said Right-to-Know requests." (*Id.* at ¶ 13). In addition, Defendants allegedly began docking Plaintiffs' pay and refusing to pay them overtime. (*Id.* at ¶ 28).

In January 2012, Plaintiffs reported Defendants' purported "official misconduct . . . , including but not limited to fraud of federal funds and the misappropriation of public federal funds," to the FBI. (*Id.* at ¶ 20). In response, Defendants allegedly began to "engag[e] in

6

surveillance" of Plaintiffs. (*Id.* at ¶ 28). On February 21, 2012, "Plaintiffs [met] with the FBI," and "[t]he very next day, the FBI issued and served a subpoena on Jackson Township[.]" (*Id.* at ¶¶ 23-24). In retaliation, Defendants allegedly "threatened to eliminate the entire police department" and started to harass Plaintiffs "via text and verbally[.]" (*Id.* at ¶ 28).

In March 2012, Plaintiffs allege that Defendants began to "wrongfully interfer[e] with police business and incit[e] individuals to make complaints about Plaintiffs." (*Id.*). According to Plaintiffs, "Davis has been subjected to even more retaliatory acts," since they initiated this suit. (*Id.* at ¶ 44). Specifically, they assert, "Fox has required all part-time police officers who have been newly hired, which includes John Saranchuk and Jason Kwiatkoski, to be his 'ally' to harm" Davis. (*Id.* at ¶ 51). Further, Fox allegedly "incited" part-time officers "to make complaints about Sergeant Davis" and to email "him with any and all alleged 'dirt' on" Davis. (*Id.*).

In sum, the allegations of retaliation here are not simply a "formulaic recitation of a cause of action[.]" See *DelRio-Mocci*, 672 F.3d at 245 (quoting *Twombly*, 550 U.S. at 555). The October 18, 2013 Complaint contains sufficient facts describing when and how Defendants allegedly retaliated against Plaintiffs to survive a motion to dismiss.

Second, Defendants contend, "[T]he Plaintiffs in this case have failed to allege any facts which could establish how any specific conduct by any Defendant has any connection to any harm the Plaintiffs have actually suffered." (Defs.' Br. in Supp. at 14). According to Defendants, "Plaintiffs must do more than plead only a temporal correlation between alleged

7

protected activity and some instances of conflict or misfortune at work." (*Id.* at 13). In response, Plaintiffs assert that they "have shown causation" "by way of animosity and timing[.]" (Pls.' Br. in Opp. at 5).

"In certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (internal quotation marks and citation omitted); *see also Beyer v. Borough*, 428 F. App'x 149, 155 (3d Cir. 2011) (quoting *Marra* in a First Amendment retaliation case). "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus[.]" *Marra*, 497 F.3d at 302.

Plaintiffs liken the present matter to *Beyer*, 428 F. App'x at 155. There, the Third Circuit reversed a district court's dismissal of a Duncannon Borough police officer's First Amendment retaliation claim. *Id.* In January 2008, Beyer pseudonymously posted comments "on the internet in opposition to the views of the Council members, who had been criticizing the purchase of" AR-15 rifles for Borough police use. *Id.* at 151. "A debate ensued over the AR-15s, and that discussion generated interest by the press." *Id.*

In the winter of 2008, Beyer appeared on a local news station to discuss the AR-15 issue. *Id.* On June 3, 2008, Beyer again posted internet comments critical of the Council. *Id.*

In response, Borough Councilman "Bell wrote Beyer a letter on June 17, 2008 questioning him about the internet posts and again on July 1, 2008 demanding a meeting with Beyer." *Id.* at 155. "On July 16, 2008, Bell wrote Beyer a letter informing him of the [Council's] decision to terminate his employment." *Id.* "In light of the temporal proximity among these events," the Third Circuit concluded, "[t]he temporal proximity clearly makes it plausible that the protected activity was a substantial factor." *Id.* (citing *DeFlaminis*, 480 F.3d at 267; *Marra*, 497 F.3d at 302).

Likewise, the temporal proximity of the allegations here "mak[e] it plausible that the protected activity was a substantial factor" in Defendants' alleged retaliatory conduct. *See id.* Plaintiffs allege Defendants began a campaign of harassment against them in December 2012, within two weeks of Davis filing a right-to-know request regarding the allocation of Jackson Township's federal disaster relief funds. (Oct. 13, 2013 Compl. at ¶¶ 13-14, 28). According to the October 18, 2013 Complaint, Defendants' antagonism towards Plaintiffs escalated after they reported Defendants to the FBI and initiated the instant action. (*Id.* at ¶¶ 21-22, 28, 34, 44). "Such allegations are sufficiently suggestive of temporal proximity between [Plaintiffs'] protected activity and Defendants' allegedly retaliatory conduct under Third Circuit precedent." *See Linskey v. Guariglia*, 2012 WL 1268913, at *6 (M.D. Pa. 2012) (finding sufficient allegations of causation in a First Amendment retaliation case, where plaintiff "was requested to vote for the favored [school board] candidate on August 9, 2011, at some point thereafter he voted against hiring the candidate requested by Defendant, and

9

on September 20, 2011, he was removed as Representative to the LIU [Luzerne Intermediate Unit]") (citing *Beyer*, 428 F. App'x at 155).

Further, the October 18, 2013 Complaint alleges a pattern of antagonism that makes it plausible that Plaintiffs' purported protected activity was a substantial factor in the retaliatory conduct alleged. Plaintiffs assert that Defendants began retaliating against them in December 2012, within two weeks of Davis' filing the right-to-know request. (Oct. 13, 2013 Compl. at ¶ 13). The retaliation, which allegedly continues to present, escalated between January and March of 2013 and after Plaintiffs filed this suit on August 21, 2012. (*Id.* at ¶ 28). In light of these allegations, the Complaint demonstrates "a pattern of antagonism coupled with timing to establish a causal link." *See DeFlaminis*, 480 F.3d at 267; *Flanagan v. Borough of Laflin*, 2014 WL 1315400, at *9 (M.D. Pa. 2014) ("Flanagan alleges facts reflecting a pattern of antagonism from the time he first engaged in purported protected activity in March 2013 when he spoke against the proposed reorganization of the police department until his demotion in October 2013.").

Therefore, Plaintiffs have stated claims of First Amendment retaliation, and the Court will deny Defendants' Motion to Dismiss as to Counts I and II.

### b. 42 U.S.C. § 1983 Conspiracy Claim

"In order for a § 1983 civil conspiracy claim to survive a 12(b)(6) motion, a plaintiff is required to 'provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Davis-Heep v. City of Phila.*, 2010 WL

1568502, at *7 (E.D. Pa. 2010) (quoting *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)). To adequately plead conspiracy under § 1983, "[a] plaintiff must make 'specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Ashton v. Knepp*, 2014 WL 3845117, at *9 (M.D. Pa. 2014) (quoting *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy and certain other actions of the alleged conspirators will be deemed sufficient." *Sheils v. Pennsubry Sch. Dist.*, 2014 WL 5038395, at *11 (E.D. Pa. 2014) (quoting *Outterbridge v. Pa. Dep't of Corr.*, 2000 WL 795874, at *3 (E.D. Pa. 2000)); *see also Goodson v. Maggi*, 797 F. Supp. 2d 624, 638 (W.D. Pa. 2011).

Here, the alleged participants in the conspiracy were Defendants Fox and Wilkes as well as nonparty part-time police officers, including Saranchuk. (*Id.* at ¶ 51). The period of the conspiracy commenced in December 2011 and allegedly continues to present. (*See id.* at ¶ 28). The object of the alleged conspiracy was to "cause harm to Plaintiffs" in retaliation for Davis' filing a right-to-know request, Plaintiffs' reporting Defendants' alleged misconduct in January 2012, and Plaintiffs' meeting with the FBI in February 2012. (*Id.* at ¶ 54). Specifically, Defendants sought to push Plaintiffs out of the police force and replace them with Saranchuk and other part-time officers. (*Id.* at ¶¶ 50-52).

Further, the October 18, 2013 Complaint alleges Defendants took specific actions in furtherance of the conspiracy. They allegedly docked Plaintiffs' pay, denied them overtime, threatened their jobs, "threatened to eliminate the entire police department," "harassed [them] via text and verbally," and "engaged in surveillance" of Plaintiffs. (*Id.* at ¶ 28). In addition, Fox "incited" Saranchuk and other part-time officers to lodge complaints about Davis and to send him "dirt" on Plaintiffs. (*Id.* at ¶ 51). The part-time officers provided Fox with such information, which he relayed to Wilkes. (*Id.* at ¶¶ 55-56).

Reading the allegations in the October 18, 2013 Complaint in favor of Plaintiffs, they have alleged enough facts to state a plausible conspiracy claim. Therefore, the Court will deny Defendants' Motion to Dismiss as to Count III.

## V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss (Doc. 59). A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge